IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

JOHN D. HAYWOOD,
Plaintiff,

v.

Case No. 18–CV–00021–JPG–GCS

ADRIAN FEINERMAN,
Defendant.

**MEMORANDUM AND ORDER**

**I.　INTRODUCTION**

Before the Court is Defendant Adrian Feinerman's Motion to Dismiss. (ECF No. 36). Magistrate Judge Gilbert C. Sison recommended that this Court deny the Motion. (ECF No. 45). Defendant objected. (ECF No. 46). Construing the Complaint in the light most favorable to Plaintiff John D. Haywood and drawing all inferences in his favor, Defendant's Motion to Dismiss is **DENIED**.

**II.　PROCEDURAL & FACTUAL HISTORY**

According to the Complaint, Plaintiff was imprisoned at Menard Correctional Center ("Menard") in Chester, Illinois in November 2007. (ECF No. 1 at 6). He relies on a wheelchair to get around; a debilitating back injury in 1995 left him temporarily paralyzed, and the discovery of bone cancer one year later resulted in the partial amputation of his left foot. (ECF No. 1 at 5). But upon incarceration at Menard, Defendant—Menard's Medical Director—confiscated Plaintiff's weight displacement brace and chair back brace. (ECF No. 1 at 6). Defendant told him that due to his maximum-security classification and the fact that Menard is not a wheelchair-accessible facility, Plaintiff would be housed in a non-handicapped-accessible area of the health care unit. (ECF No. 1 at 6).

Plaintiff wrote to Assistant Warden Gary Conder asking for an emergency medical transfer to Big Muddy River Correctional Center. (ECF No. 1 at 6). Conder replied and informed Plaintiff that a transfer request could not be accommodated until Plaintiff was at Menard for at least six months. (ECF No. 1 at 6). At approximately 7:00 AM the following day, Defendant chastised Plaintiff for going "over his head" and ordered Plaintiff to gather his belongings. (ECF No. 1 at 6). Defendant instructed a corrections officer to push Plaintiff off his wheelchair and confiscate it. (ECF No. 1 at 6). The corrections officer told Plaintiff that he would be sent to the segregation unit if he did not get to the third floor of the North One housing area in a timely fashion. (ECF No. 1 at 6). When a lieutenant protested and demanded a wheelchair for Plaintiff, he was denied at Defendant's behest. (ECF No. 1 at 6). The lieutenant obtained a cart from a groundskeeper and pushed Plaintiff in it until they arrived at North One. (ECF No. 1 at 6). Plaintiff crawled up the three flights of stairs and was taken to his cell in a gallery cart. (ECF No. 1 at 7).

One month later, Plaintiff was moved to a cell on the first floor of the West House housing area and placed on "permanent lay-in" for over eight years. (ECF No. 1 at 7). From December 2009 to March 2016, Plaintiff was prohibited from leaving West House: no yard, chow hall, chapel, library, commissary, or prison programs. (ECF No. 1 at 7). Apart from visits to the health care unit, Plaintiff was denied access to a wheelchair for the entire period. (ECF No. 1 at 7). Even as he was transferred to Lawrence Correctional Center in March 2016, Plaintiff was denied access to a wheelchair and forced to crawl on the pavement to the bus. (ECF No. 1 at 7).

Plaintiff—still incarcerated at Lawrence Correctional Center—filed suit against 21 individual defendants and two unknown medical staff members pursuant to 42 U.S.C. § 1983. The Court severed the claims into four new cases. (See ECF No. 14). Counts 3 and 4 against Defendant are the only remaining claims here.

The pro se Complaint raises two claims against Defendant: (1) deliberate indifference under the Eight Amendment; and (2) retaliation under the First Amendment. Defendant filed a Motion to Dismiss arguing that the claims are barred by the statute of limitations.[1] Magistrate Judge Gilbert C. Sison issued a Report and Recommendation recommending that this Court deny Defendant's Motion. Defendant objected, prompting de novo review.

### III. LAW & ANALYSIS

#### A. Standard of Review

Any party may object to a magistrate judge's proposed dispositive findings, recommendations, or reports (collectively "R&R"). SDIL-LR 73.1(b). The district court shall review de novo those portions of the R&R that are specified in the party's written objection. Id. The district court may accept, reject, or modify the R&R, in whole or in part. Id.

Motions to dismiss for failure to state a claim are governed by Rule 12(b)(6) of the Federal Rules of Civil Procedure. To survive, a complaint must contain enough factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). "[A]ssuming that a plausible claim for relief is pleaded, the Federal Rules continue to rely on discovery and summary judgment practice to define the issues, identify genuine fact disputes,

---

[1] The Complaint, submitted by a then-pro se plaintiff, left it for the Court to articulate the claims. (ECF No. 14 at 11). The Court noted that, "[a]s they may represent a continuing violation, it would be premature to dismiss Counts 3 or 4 based on the statute of limitations." (ECF No. 14 at 15). Upon further review of the Complaint—consistent with Magistrate Judge Sison's findings—Counts 3 and 4 warrant recharacterization as continuing violations that lasted until Plaintiff's transfer in March 2016:

> Count 3: Eighth Amendment deliberate indifference claim against Dr. Feinerman for denying Plaintiff access to a wheelchair from November 2007 to March 2016.
>
> Count 4: First Amendment retaliation claim against Dr. Feinerman for confiscating Plaintiff's wheelchair after Plaintiff complained to Assistant Warden Conder in November 2007 and continuing to deny Plaintiff access to a wheelchair through March 2016.

and dispose of unmeritorious claims." FED. R. CIV. P. 12 advisory committee's note. "At this stage the plaintiff receives the benefit of imagination, so long as the hypotheses are consistent with the complaint." Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994). And a pro se complaint, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520–21 (1972).

### B. Eighth Amendment Claim: Deliberate Indifference

Defendant argues that Plaintiff's Eight Amendment deliberate indifference claim is barred by the statute of limitations. Specifically, Defendant argues that since the Complaint makes no mention of Defendant after 2008, Plaintiff's claims accrued at that time. The Court disagrees.

#### i. Legal Standard

The deliberate indifference to a prisoner's serious medical needs can give rise to a violation of the Eighth Amendment's prohibition on cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97, 104 (1976); Zentmyer v. Kendall Cty., 220 F.3d 805, 810 (7th Cir. 2000). In such "deliberate indifference" cases, an inmate must satisfy a two-prong test: (1) the deprivation must be objectively serious; and (2) the prison official must have exhibited deliberate indifference to the inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

An objectively serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Gutierrez v. Peters, 111 F.3d 1364. 1373 (7th Cir. 1997). The medical condition need not be life-threatening—the denial of the "minimal civilized measure of life's necessities" is enough. Farmer, 511 U.S. at 834; Henderson v. Sheahan, 196 F.3d 839, 846 (7th Cir. 1999).

The second prong is a subjective standard: The prison official must have "acted with a sufficiently culpable state of mind." Johnson v. Doughty, 433 F.3d 1001, 1010 (7th Cir. 2006).

"Something more than negligence or even malpractice is required." Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014).

### ii. Statute of Limitations & Accrual

Plaintiff brought this action under 42 U.S.C. § 1983. That section provides that a plaintiff "depriv[ed] of any rights, privileges, or immunities secured by the Constitution," by persons acting under color of state law, may bring "an action at law, suit in equity, or other proper proceeding for redress." Id. Actions under § 1983 must be brought within the statute of limitations for personal injuries supplied by the state in which the claim arose. Huber v. Anderson, 909 F.3d 201, 207 (7th Cir. 2018).

Defendant does not object to—and therefore accepts—the magistrate judge's finding that the claim arose in Illinois. And under Illinois law, the statute of limitations for personal injuries is two years. 735 ILL. COMP. STAT. 5/13–202 (2016); Ashafa v. City of Chicago, 146 F.3d 459, 461 (7th Cir. 1998).

A statute of limitations is said to start running at the time a claim "accrues." See Accrue, BLACK'S LAW DICTIONARY (11th ed. 2019). And while the Court looks to state law when determining the applicable statute of limitations, "[a]ccrual rules . . . are governed by federal law 'conforming in general to common-law tort principles.'" Devbrow v. Kalu, 705 F.3d 765, 767 (7th Cir. 2013) (quoting Wallace v. Kato, 549 U.S. 384, 387–88 (2007)). Since there is no single accrual rule for all § 1983 claims, the Court must apply the common-law cause of action most like the kind of claim Plaintiff asserts. Devbrow, 705 F.3d at 767; Wallace, 549 U.S. at 388.

The tort claim most closely analogous to a deliberate-indifference claim premised on the denial of medical equipment is medical malpractice. "A § 1983 claim to redress a medical injury arising from deliberate indifference to a prisoner's serious medical needs accrues when the plaintiff knows of his physical injury and its cause." Devbrow, 705 F.3d at 768. In the context of a "continuing violation,"

however, "the limitations period may commence *later* than the date of discovery." Id. at 768–69 (emphasis in original). The doctrine of continuing violation is a general principle of federal common law not specific to § 1983. Heard v. Sheahan, 253 F.3d 316, 318 (7th Cir. 2001). Where the violation of the plaintiff's constitutional rights is a continuing one, the cause of action accrues "from the date of the last incidence of that violation, not the first." Turney v. Rednour, 729 F.3d 645. 651 (7th Cir. 2013).

In Heard, the plaintiff prisoner filed an Eighth Amendment deliberate indifference suit against county jail officials after months of unsuccessfully demanding medical attention for a ruptured hernia. 253 F.3d at 316. The district court pegged the accrual date to when the plaintiff first discovered that he required medical attention, placing his claims outside the two-year statute of limitations. The Seventh Circuit reversed. Rather than requiring the plaintiff to file a series of piecemeal suits for each alleged denial of treatment, the court considered the entire period as "a continuous series of events giv[ing] rise to a cumulative injury," in part because "it would impose an unreasonable burden on the courts to entertain an indefinite number of suits and apportion damages among them." Id. at 320. Each new refusal by the officials thus "marked a fresh infliction of punishment that caused the statute of limitations to start running anew." Id. at 318. Since " 'the cause of action accrues at . . . the date of the last injury,' " id. at 319 (quoting Matson v. Burlington N. Santa Fe R.R., 240 F.3d 1233, 1237 (10th Cir. 2001), the court determined that the actual accrual date was within the limitations period.

Looking to the Complaint, Defendant argues that the last alleged violation occurred in 2007, thus barring Plaintiff's claims by the two-year statute of limitations. But Defendant's reading of the Complaint is inaccurate, especially considering this Court's liberal pleading standards. The Complaint describes in sufficient detail the steps that Defendant took to deny Plaintiff access to a wheelchair—a medical device—in his initial years at Menard. And from November 2007 through March 2016, Plaintiff was never again provided with a wheelchair for daily use. (ECF No. 1 at 7). The facts alleged

in the Complaint allow this Court to draw the reasonable inference that Defendant, in his capacity of Medical Director, was the source of Plaintiff's eight-year-long deprivation of a wheelchair. Even if the truth of the facts alleged appear doubtful, the Court cannot dismiss a claim if—taking the facts pleaded as true—Plaintiff "nudged [his] claims across the line from conceivable to plausible." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Accordingly, for the purposes of this Motion to Dismiss, the Court finds Plaintiff's Eighth Amendment claim against Defendant as within the two-year statute of limitations.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss with respect to Count 3.

### C. First Amendment Claim: Retaliation

Defendant argues that Plaintiff's First Amendment retaliation claim is barred by the statute of limitations. Specifically, Defendant argues that since the alleged retaliatory act occurred in November 2007, Plaintiff's claims accrued at that time. The Court disagrees.

#### i. Legal Standard

Prison officials may not retaliate against inmates for filing grievances, lawsuits, or otherwise complaining about their conditions of confinement. To state a claim for retaliation, a prisoner must allege that: "(1) he was engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the Defendants' decision to take the retaliatory action." Bridges v. Gilbert, 557 F.3d 541, 547 (7th Cir. 2009) (quoting Massey v. Johnson, 457 F.3d 711, 716 (7th Cir. 2006)). A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred." Cain v. Lane, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); Murphy v. Lane, 833 F.2d 106, 108–09 (7th Cir. 1987) (holding that the plaintiff's complaint "set forth a chronology of events from which retaliatory animus on the part of defendants could be inferred" sufficient to overcome a motion to dismiss).

In Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000), the plaintiff prisoner filed a First Amendment retaliation suit against state prison officials. The plaintiff argued that after filing a grievance against the prison's law library supervisor, the officials repeatedly denied him access to the law library. Id. The court noted that "[a]lthough we would wish for more detail, we find that the chronology alleges the bare minimum necessary to survive dismissal." Id.; see also Gomez v. Randle, 680 F.3d 859, 867–68 (7th Cir. 2012) (reversing the district court's premature dismissal of a prisoner's First Amendment retaliation claim).

### ii. Statute of Limitations & Accrual

As discussed, the statute of limitations for § 1983 claims in Illinois is two years. 735 ILL. COMP. STAT. 5/13–202 (2016); Ashafa v. City of Chicago, 146 F.3d 459, 461 (7th Cir. 1998). And federal law governs the accrual date for § 1983 claims, which is when the plaintiff "knows or should know that his or her constitutional rights have been violated." Hileman v. Maze, 367 F.3d 694, 696 (7th Cir. 2004). While the statute of limitations clock generally begins to run on First Amendment claims immediately after the retaliatory act occurred, Gekas v. Vasiliades, 814 F.3d 890, 894 (7th Cir. 2016), the limitations period may commence later in certain circumstances. See, e.g., Mosely v. Bd. of Educ., 434 F.3d 527, 535 (7th Cir. 2006) (reversing the district court's dismissal on statute of limitations grounds) ("Even if the incidents relating to [the defendant] occurred more than two years before [the plaintiff] filed this case, [the plaintiff's] complaint recounted other instances of harassment that took place within the two-year time limit.").

Like the Eighth Amendment claim, Defendant's withholding of a wheelchair is better seen as an ongoing injury than as a harm triggered by a one-time event. Taking the facts in the Complaint as true, Defendant approached Plaintiff the day after contacting Assistant Warden Conder, warned him against ever going "over his head," and confiscated his wheelchair. (ECF No. 1 at 6). See Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir. 2010) ("A prisoner has a First Amendment right to make

grievances about conditions of confinement."). When the lieutenant sought permission for a wheelchair, he was denied on Defendant's orders. (ECF No. 1 at 6). And that was the last time Plaintiff was allowed access to a wheelchair for daily use. (ECF No. 1 at 7).

At this early stage of the proceedings, it is conceivable that Defendant's continuing pattern of refusal was in response to Plaintiff's letter to Assistant Warden Conder and thus retaliatory in nature. This prolonged deprivation—from November 2007 to March 2016—constitutes a continuous violation of the First Amendment, placing it within the two-year statute of limitations.

Accordingly, the Court **DENIES** Defendant's Motion to Dismiss with respect to Count 4.

## IV. CONCLUSION

The Court does not exclude the possibility that discovery may reveal that Plaintiff is unable to prove deliberate indifference and retaliation. He has alleged, however, that they did, and that is enough for purpose of Rule 12(b)(6). The Court hereby:

- **ADOPTS** the R&R in its entirety (ECF No. 45);
- **OVERRULES** Defendant's objections (ECF No. 46); and
- **DENIES** Defendant's Motion to Dismiss.

**SO ORDERED.**

**Dated: September 5, 2019**

S/J. Phil Gilbert
**J. PHIL GILBERT**
**UNITED STATES DISTRICT JUDGE**